UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | | |
|---|---|---|
| LAWRENCE W. HUFF | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION FILE NO. |
| | ) | _____ |
| v. | ) | |
| | ) | |
| CITY OF TEMPLE, GEORGIA | ) | JURY TRIAL DEMANDED |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW Lawrence W. Huff ("Plaintiff") and asserts his claims under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. §201 et seq. (hereinafter "FLSA") for unpaid overtime, retaliatory discharge and other relief on the grounds set forth below:

## JURISDICTION AND VENUE

1. The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1337. This Court also has jurisdiction pursuant to 29 U.S.C. § 216(b).

2. Pursuant to 28 U.S.C. § 1391 venue is appropriate in this judicial district as the Defendant resides herein.

## PARTIES

3. Plaintiff is a Georgia resident and a former employee of the City of Temple, Georgia ("Defendant"). The city of Temple is located in Carroll County.

1

4. Defendant is an "employer" within the meaning of the FLSA.

5. Defendant is subject to the jurisdiction of this Court.

6. Defendant may be served with process via service on Mayor Rick Ford, 337 Sage Street, Temple, Georgia 30179.

## FACTUAL ALLEGATIONS

7. Plaintiff was hired to work for Defendant on or about March 11, 2005 as a Wastewater Operator (Class 2).

8. Plaintiff was hired by Don Mckenzie, Defendant's then City Administrator.

9. Plaintiff was paid for the worked he performed as a Wastewater Operator on a salary basis. His salary was set at $36,000 annually.

10. From March, 2005 through April, 2010 Plaintiff was regularly scheduled to work six (6) days per week, Tuesday through Sunday.

11. From March, 2005 up to and through April 12, 2010 Plaintiff consistently worked a minimum of 52 hours per week performing his duties as a Wastewater Operator.

12. Defendant did not keep accurate records of Plaintiff's hours of work from March, 2005 up to and through April, 2010. Rather, Plaintiff was required to sign timesheets which erroneously showed him working a static number of hours per day, without any fluctuation in his hours.

13. In April, 2010 Defendant installed a time clock at the wastewater facility, and

Plaintiff was required to clock in and out daily.

14. From April 12, 2010 to early September, 2010, when Plaintiff contacted the Wage & Hour Division of the U.S. Department of Labor ("DOL") about his unpaid overtime, Plaintiff worked an average of 46 hours per week.

15. As a Wastewater Operator (Class 2), Plaintiff did not qualify for any of the overtime exemptions (executive, professional or administrative exemptions) under the FLSA.

16. Based on his job duties as a Wastewater Operator (Class 2), Plaintiff was non-exempt for the purpose of overtime compensation.

17. Defendant misclassified Plaintiff as non-exempt from overtime under the FLSA.

18. Based on Defendant's misclassification of Plaintiff as an exempt employee, Defendant did not pay Plaintiff overtime for the considerable hours he worked in excess of forty (40) per week during his employment with Defendant as a Wastewater Operator (Class 2).

19. During Plaintiff's employment with Defendant, Defendant informed Plaintiff that he was not entitled to receive overtime compensation as a Wastewater Operator Wastewater Operator (Class 2).

20. During Plaintiff's employment with Defendant, Defendant informed Plaintiff that he was not entitled to receive overtime compensation as a Wastewater

Operator Wastewater Operator (Class 2) because he was paid on a salary basis.

21. From July, 2005 up to and through April 12, 2010 Plaintiff worked six (6) days a week, averaging 6-8 hours of work on both Saturdays and Sundays, totaling 12-14 hours on those two days. During the week, Tuesday through Friday, Plaintiff averaged approximately 10 hours of work per day. Plaintiff also worked on all holidays.

22. At various times, there were emergencies or serious situations which required Plaintiff to work long hours consecutively to ensure that the wastewater facility complied with all state and federal regulations.

23. Plaintiff was able to work long hours for Defendant because from July, 2005 through January, 2009 Plaintiff lived in a rental house on the facility property. Thereafter, he lived within a half-mile of the facility, which allowed him to respond to serious situations promptly and efficiently.

24. For example, as the result of an actuator malfunction at Defendant's wastewater facility, Plaintiff worked a total of 684 hours in a 37 day period from December 18, 2009 to January 24, 2010 (averaging 18 hour days) to keep the facility operating in compliance with the state Environmental Protection Division ("EPD") discharge permit. During this period of time, Plaintiff worked approximately 450 hours of overtime. Plaintiff actually spent

the night working at the facility twice. This was necessary to keep it operating within EPD discharge permit compliance. Plaintiff was able to do this because he lived less than half a mile from the facility.

25. In early September, 2010 Plaintiff contacted the DOL about Defendant's failure to pay him overtime for the hours he worked over 40 per work week as a Wastewater Operator (Class 2) from 2005 forward.

26. Upon information and belief, a DOL representative contacted Defendant and informed Defendant that Plaintiff was a non-exempt employee under the FLSA.

27. Upon information and belief, DOL personnel informed Defendant and it was obligated to pay Plaintiff overtime at time-and-a-half for the hours that he worked in excess of forty (40) in any given week under the FLSA.

28. Upon information and belief, the DOL instructed Defendant to remit unpaid overtime to Plaintiff by November 15, 2010.

29. Upon information and belief, Defendant did not comply with the DOL's directive by offering to pay Plaintiff his unpaid overtime at the proper rate, which was time-and-a-half of his regular rate of pay.

30. Rather, Defendant asserted that Plaintiff was subject to a "Fluctuating Workweek" overtime calculation, and thus was to be paid half-time for his overtime hours, based on an alleged agreement at the commencement of

Plaintiff's employment that his salary covered all his hours of work in a given work week.

31. Despite an alleged "Fluctuating Workweek" overtime calculation agreement, Defendant did not pay Plaintiff for any of his overtime hours from March, 2005 up to and through, November 12, 2010.

32. Plaintiff was terminated effective November 12, 2010.

33. Before Plaintiff was terminated, he engaged in protected activity under the FLSA.

34. Plaintiff did not receive the overtime premium pay to which he was entitled for the overtime hours he worked for Defendant as a non-exempt Wastewater Operator (Class 2) from March, 2005 through November, 2010.

## CLAIMS FOR RELIEF

### VIOLATION OF 29 U.S.C. § 207
### (FAILURE TO PAY OVERTIME)

35. Paragraphs 1 through 34 are incorporated herein by this reference.

36. Defendant failed and/or refused to pay Plaintiff overtime for hours he worked as a non-exempt Wastewater Operator (Class 2) in excess of forty (40) per week from March, 2005 through November, 2010.

37. Defendant misclassified Plaintiff as exempt from overtime under the FLSA.

38. Defendant did not engage in due diligence to determine whether Plaintiff qualified for any of the overtime exemptions under the FLSA and, thus,

whether he was properly classified as exempt from overtime under the FLSA.

39. Defendant did not seek or obtain a legal opinion from qualified counsel as to whether Plaintiff qualified for any of the overtime exemptions under the FLSA and, thus, whether he was properly classified as exempt from overtime under the FLSA, prior to or during Plaintiff's employment with Defendant.

40. Defendant's violation of the FLSA was intentional and willful.

41. Said violation gives rise to a claim for relief under the FLSA for the unpaid overtime for three (3) years prior to the filing of this Complaint, liquidated damages in an amount equal to the unpaid overtime, declaratory and injunctive relief, prejudgment interest and reasonable attorney's fees and expenses of litigation, pursuant to 29 U.S.C. §§ 207 & 216.

<u>VIOLATION OF 29 U.S.C. § 215</u>
<u>(RETALIATORY DISCHARGE)</u>

42. Paragraphs 1 through 41 are incorporated herein by this reference.

43. On January 14, 2010 Plaintiff sent Mayor Rick Ford and members of Defendant's City Council an e-mail concerning Defendant's decision regarding certain employee benefits. Mayor Ford responded in writing to Plaintiff's e-mail later that day. Exhibit "A" to this Complaint is a true and accurate copy of the e-mail that Plaintiff sent to Mayor Ford and Mayor Ford's response thereto.

44. Plaintiff was not reprimanded or disciplined in any way for sending this e-

mail to Mayor Ford and members of Defendant's City Council.

45. Plaintiff was not informed that sending such an e-mail to Mayor Ford and/or members of Defendant's City Council was or even might be a violation of Defendant's policies and procedures.

46. On September 1, 2010 Plaintiff sent an e-mail to Mayor Ford and Defendant's city council members regarding, among other things, concerns he had about his unpaid overtime hours and various operational issues with the wastewater facility. Plaintiff did not send this e-mail to City Administrator Kim Pope because he did not know her e-mail address, which was not prominently listed on Defendant's website.

47. In his e-mail, Plaintiff noted:

> As you can see below, there are only 1245 people in the WHOLE state of Georgia who are qualified to work at Temple's wastewater plant, and one lives inside the city limits. I do the best job i can do for Temple, going above and beyond on a regular basis. *Pull my hours since time clock was put in 4 months ago and i think you will find i have near 100 hours of overtime hours that i haven't been paid a dime for because im salary.* We do what has and needs to be done to keep plant running and in compliance and I'm proud to be able to say that!

> (Exhibit "B", p. 2)

48. Exhibit "B" to this Complaint is a true and accurate copy of the e-mail that Plaintiff sent on September 1, 2010.

49. Despite this e-mail, Defendant did not indicate to Plaintiff that it intended to

rectify the issue with Plaintiff's unpaid overtime.

50. In early September, 2010 Plaintiff contacted the DOL about Defendant's failure to comply with federal wage and hour law by not paying him overtime for the considerable hours he had worked over 40 per work week as a non-exempt Wastewater Operator (Class 2) from March, 2005 forward.

51. Upon information and belief, a DOL representative contacted Defendant and informed Defendant that Plaintiff was a non-exempt employee under the FLSA; thus, he was entitled to receive overtime pay.

52. Upon information and belief, DOL personnel informed Defendant and it was obligated to pay Plaintiff overtime for the hours he had worked in excess of forty (40) in any given week under the FLSA.

53. Upon information and belief, the DOL instructed Defendant to remit unpaid overtime to Plaintiff.

54. Upon information and belief, Defendant did not comply with the DOL's directive by offering to pay Plaintiff his unpaid overtime at the proper rate, which was time-and-a-half of his regular rate of pay.

55. Rather, Defendant asserted that Plaintiff was subject to a "Fluctuating Workweek" overtime calculation, and thus was to be paid half-time for his overtime hours, based on alleged agreement at the commencement of Plaintiff's employment that his salary covered all his hours of work in a given

work week.

56. Despite an alleged "Fluctuating Workweek" overtime calculation agreement, Defendant did not pay Plaintiff for any of his overtime hours from March, 2005 up to and through, November, 2010.

57. On November 2, 2010, Plaintiff sent an e-mail to City Administrator Kim Pope concerning Defendant's failure/refusal to comply with federal wage and hour law regarding payment of his overtime.

58. Exhibit "C" to this Complaint is a true and accurate copy of the e-mail that Plaintiff sent on November 2, 2010.

59. Plaintiff subsequently informed Defendant in writing on or about November 5 that if the parties could not resolve the overtime issue amicably by November 12, 2010 he would seek to enforce his rights by filing a lawsuit at that time.

60. On November 11, 2010, nine (9) days after Plaintiff sent City Administrator Pope the e-mail regarding Defendant's failure to pay his overtime, a meeting was held with Defendant's management personnel and city council members. In that meeting, various city employees who had interacted with Plaintiff in the course of his employment, including Plaintiff's supervisor David Henson, were required to attend and answer numerous question about Plaintiff.

61. Upon information and belief, employees were asked questions concerning whether they were aware if Plaintiff had violated any city policies and

procedures, whether Plaintiff had engaged in any form of misconduct, whether Plaintiff posed a threat to the city, whether Plaintiff would engage in sabotage of the wastewater plant, whether Plaintiff was violent or had violent tendencies, whether Plaintiff had threatened or made derogatory comments about Kim Pope, and other similar questions.

62. Upon information and belief, Kim Pope instructed Supervisor Henson after this meeting to write a letter stating affirmatively that Plaintiff had called her a "bitch."

63. Upon information and belief, Supervisor Henson told Ms. Pope that he did not have a specific recollection of Plaintiff ever actually calling her a "bitch."

64. Plaintiff was terminated on November 12, 2010 for allegedly using profane language and allegedly making hostile and/or derogatory remarks about City Administrator Pope back on September 1, 2010 after she informed him that he was no longer allowed to have his pet dog accompany him on wastewater facility property.

65. Before Plaintiff was terminated, he engaged in protected activity under the FLSA by contacting the U.S. DOL and Defendant concerning its failure/refusal to comply with federal wage and hour law, i.e., not paying him the overtime premium for his considerable overtime hours from March, 2005 forward.

66. Defendant was aware of Plaintiff's protected activity at the time that Plaintiff was terminated.

67. Plaintiff was terminated effective November 12, 2010.

68. Plaintiff was terminated, in whole or in part, in retaliation for engaging in protected activity under the FLSA.

WHEREFORE, Plaintiff requests this Court:

(a)  Take jurisdiction of this matter;

(b)  Grant a trial by jury as to all matters properly triable to a jury;

(c)  Issue a judgment declaring that Plaintiff is covered by the provisions of the FLSA and that Defendant has failed to comply with the requirements of the FLSA;

(d)  Issue preliminary and permanent injunctions directing Defendant to comply with the provisions of the FLSA;

(e)  Award Plaintiff all unpaid overtime to which he is entitled and liquidated damages equaling 100% of said amounts as required by the FLSA;

(f)  Award Plaintiff appropriate back pay and front pay as a result of Defendant's retaliatory discharge;

(g)  Award Plaintiff compensatory damages in an amount to be determined by the enlightened conscience of an impartial jury;

(h)     Award Plaintiff pre-judgment interest on all amounts owed;

(i)     Award Plaintiff reinstatement into his former position with Defendant;

(j)     Award Plaintiff his attorney's fees and expenses of litigation; and

(k)     Award any and such other further relief this Court deems just, equitable and proper.

Respectfully submitted this 7th day of January, 2011.

*/s/ A. Bradley Dozier, Jr.*
A. Bradley Dozier, Jr.
Georgia Bar No. 228701

DOZIER LAW GROUP, LLC
889 Lenox Court, N.E.
Atlanta, Georgia 30324
Telephone   (404) 949-5600
Facsimile   (404) 478-8880